IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO CAR CARE INC., on behalf of plaintiff and the class members defined herein, ) ) ) Plaintiff, ) ) ) v. ) ) A.R.R. ENTERPRISES, INC., et al., ) ) Defendants. ) | No. 19-cv-07687 Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chicago Car Care, Inc. ("Chicago Car") alleges that it received an unsolicited fax advertisement from A.R.R. Enterprises, Inc., doing business as Atlanta Wheels and Accessories ("Atlanta Wheels").[1] Chicago Car seeks to represent classes of fax recipients in Illinois and across the country that were allegedly reached by Atlanta Wheels's fax advertisement campaign, asserting claims pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Illinois state law. (Compl., Dkt. No. 1.) Atlanta Wheels now asks the Court to dismiss the state law claims and strike the class allegations. (Dkt. No. 16.) For the reasons that follow, Atlanta Wheels's motion to dismiss Counts II, III, and IV is granted, and those counts are dismissed without prejudice. Its request to strike the class allegations is denied.

### BACKGROUND

For the purposes of Atlanta Wheels's motion to dismiss and strike, the Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to Chicago Car. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015) (motions

---

[1] Chicago Car also names ten unidentified "John Does" in the Complaint, which has no impact on the parties' arguments or the Court's opinion at this stage.

to dismiss); *Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (motions to strike). The Complaint alleges as follows.

On June 7, 2017, Chicago Car received an unsolicited fax advertisement from Atlanta Wheels. (Compl. ¶¶ 9, 11.) In the one-page advertisement, Atlanta Wheels announces itself to be a "WHOLESALE DISTRIBUTOR!," offers automobile wheels for sale, and provides a phone number and website. (Compl., Ex. A, Fax Advertisement, Dkt No. 1-1.) Chicago Car did not have a prior relationship with Atlanta Wheels and had not authorized Atlanta Wheels to send the fax. (Compl. ¶ 14.) Atlanta Wheels sent many such faxes, which reached at least 40 other persons in Illinois. (*Id.* ¶¶ 16–17.) The faxes consumed recipients' ink, toner, and paper. (*Id.* ¶¶ 22, 38, 53.)

Chicago Car's complaint contains four counts. Count I alleges that Atlanta Wheels violated the TCPA by sending unsolicited advertising faxes. Counts II, III, and IV allege that Atlanta Wheels also violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, committed common law conversion, and committed common law trespass to chattels by sending unsolicited advertising faxes that appropriated Chicago Car's fax equipment, paper, and ink or toner. For each count, Chicago Car also makes class allegations pursuant to Federal Rule of Civil Procedure 23(b)(3).

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading standard does not require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Nonetheless, the Court need not accept a party's legal conclusions, and a party cannot defeat a motion to dismiss with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

### I. State Law Claims

Courts in this District frequently have considered whether recipients of unsolicited fax advertisements can sustain the state-law claims brought here. In recent decisions, as discussed below, courts overwhelmingly hold that fax advertisements do not cause sufficient harm to sustain the state law claims Chicago Car sets forth here.

#### A. Illinois Consumer Fraud Act

Chicago Car alleges that Atlanta Wheels's act or practice of sending advertisement faxes was unfair and thus violated the ICFA. Courts weigh three factors when evaluating unfairness claims under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). All three criteria do not need to be met; instead, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992)).

Other courts in this District have held that the second and third ICFA factors weigh strongly against ICFA liability based on an unsolicited fax advertisement. *See, e.g.*, *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.* No. 16 C 2513, 2017 WL 2619144, at *6 (N.D. Ill. June 16, 2017) ("[A] burgeoning majority of courts—and all the recent decisions—hold that receiving one- or two-page unsolicited faxes does not trigger *Robinson*'s other two factors.")

3

Regarding the second factor (whether the practice is immoral, unethical, oppressive, or unscrupulous), one court observed:

> The improper use of one piece of paper, a small amount of toner, and a few seconds of an employee's time is not oppressive conduct, nor does it fit within the definitions of any of the other terms [immoral, unethical, or unscrupulous]. Rather, sending an unsolicited fax is more akin to taking someone else's pen and notebook without their permission and writing some notes on one sheet of paper.

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009). Similarly, the third factor of "significant harm" requires more than the cost and inconvenience of receiving a single fax. *W. Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *6 (N.D. Ill. June 13, 2006) ("[T]he cost of receiving and printing a single page facsimile advertisement cannot be characterized as 'significant harm.'") Nor can this defect be cured by aggregating claims, considering the extremely small value of the individual claims at issue. *See Stonecrafters*, 633 F. Supp. 2d at 617 ("[A] thousand people suffering damage in the amount of a couple of pennies . . . only amounts to an aggregate harm of $20.")

Chicago Car contends that a public policy violation alone is sufficient to establish ICFA liability but it fails to support this proposition. *See People v. Howard*, 888 N.E.2d 85, 90–91 (Ill. 2008) (rejecting *de minimis* doctrine as to criminal statute's definition of "unlawful act"); *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830–832 (7th Cir. 2014) (discussing Illinois public policy regarding antitrust violations, but not discussing the *de minimis* doctrine). Certainly, an ICFA claim must satisfy "at least one" of the three criteria. *Batson*, 746 F.3d at 830. But Chicago Car goes too far in arguing that establishing **any** one ICFA criterion suffices to state a claim. Perhaps some conduct offending public policy could constitute an ICFA violation despite failing to meet the "oppressive conduct" or "significant harm" factors, but the junk fax practices at issue here do

4

not because the second and third factors weigh so strongly against Chicago Car. The Court acknowledges that Illinois law treats the sending of junk faxes as a fineable petty offense, *see* 720 ILCS 5/26-3, but cannot conclude that all fineable actions trigger ICFA liability. Chicago Car similarly fails to persuade with its other arguments: that practices inflicting unavoidable injury are necessarily oppressive and unfair; that junk faxing at large costs recipients millions of dollars; that the small harms caused by junk faxing may aggregate to a significant amount; and that junk faxing unfairly advantages the sender over rule-following competitors. The Court follows the decisions in *Stonecrafters*, 633 F. Supp. 2d 610, and *Lusida*, 2006 WL 1697119, and holds that Chicago Car has failed to state a claim. Count II is dismissed.

### B. Conversion and Trespass to Chattels

Chicago Car also alleges conversion under Illinois law, which requires a showing of "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). And it further asserts a claim for trespass to chattels, which requires "an injury to or interference with possession, with or without physical force, to personal property" involving "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16-CV-8219, 2017 WL 2152429, at *7 (N.D. Ill. May 17, 2017) (citations omitted). Trespass to chattels is "on the same spectrum" as conversion, differing "only with respect to the extent of interference with the property owner's rights." *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, No. 13 C 7965, 2014 WL 2198242, at *5 (N.D. Ill. May 27, 2014).

Courts in this District regularly reject conversion claims based on unsolicited fax advertisements pursuant to the *de minimis* doctrine. *See Stonecrafters*, 633 F. Supp. 2d at 613 ("[T]he ancient maxim 'de minimis non curat lex' might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax advertisement." (internal quotation marks omitted)). This Court has rejected conversion claims that rely on extremely minor injuries. *See Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 908 (N.D. Ill. 2016). Thus, the Court applies the *de minimis* doctrine to Chicago Car's conversion and trespass to chattels claims. *See, e.g.*, *Glen Ellyn Pharmacy, Inc. v. Kloudscript, Inc.*, No. 19 CV 2829, 2019 WL 6467319, at *4 (N.D. Ill. Dec. 2, 2019); *G. Neil Garrett*, 2014 WL 2198242 at *5.

Chicago Car asserts that nominal damages can be appropriately awarded for conversion of even a single piece of paper. The Court has previously considered, and rejected, this argument, explaining:

> [W]hile some cases have pointed to the availability of nominal damages for conversion claims, nominal damages and *de minimis* damages are two distinct concepts. Nominal damages may be appropriate "when there is a violation of sufficient gravity, but significant damages cannot be proved with sufficient specificity." In contrast, the *de minimis* doctrine applies to "claims in which the plaintiff has suffered no more than negligible damages from the beginning." Thus, where there is no particular difficulty quantifying the damages in an unsolicited communication case, a court should not consider nominal damages.

*Izsak*, 191 F. Supp. 3d at 909 (quoting *Quality Mgmt. & Consulting Servs., Inc. v. SAR Orland Food Inc.*, No. 11 CV 06791, 2012 WL 2128327, at *3 (N.D. Ill. June 11, 2012); *see also Stonecrafters*, 633 F. Supp. 2d at 614). Here, the alleged damages can be quantified—the cost (in pennies) of paper and toner and the seconds of an employee's time required to discard the fax, described in a junk mail case as "[t]he short, though regular, journey from mail box to trash can." *Lamont v. Comm'r of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y.), *aff'd,* 386 F.2d 449 (2d

Cir. 1967). The damages alleged here are *de minimis*, not nominal. Chicago Car offers no authority that would distinguish the trespass from chattels claim from the conversion claim on this issue. Thus, the Court dismisses Counts III and IV.

## II.   Class Certification

The Court next turns to the motion to strike. In Count I, Chicago Car proposes the following class definition for its TCPA claims:

> (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action . . . (c) were sent faxes by or on behalf of defendant A.R.R. Enterprises, Inc., promoting its goods or services for sale (d) where defendant does not have evidence of consent or an established business relationship prior to the sending of the faxes.

(Compl. ¶ 26.) Atlanta Wheels moves to strike these class allegations, contending that individualized factual issues among class members preclude certification.[2]

### A.   Legal Standard

Rule 23 sets out the requirements to certify a plaintiff class. Rule 23(a) requires numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Here, where Chicago Car seeks certification pursuant to Rule 23(b)(3), the plaintiff class must also demonstrate predominance and superiority. Fed. R. Civ. P. 23(B)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

Atlanta Wheels challenges whether the proposed class meets the commonality and predominance requirements. Commonality requires that a class's claims "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

---

[2] While Atlanta Wheels initially also contended that this Court lacked specific jurisdiction over out-of-state class members, it retracted this argument following the Seventh Circuit's recent opinion in *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020) (holding that unnamed class members need not demonstrate personal jurisdiction over defendants in class actions).

*Dukes*, 564 U.S. at 350. Predominance requires that common questions predominate over individual questions in resolving class members' claims. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814–15 (7th Cir. 2012). Predominance is not measured by merely counting the individual issues against the common issues, but also by weighing their relative importance. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018), *cert. denied,* 139 S. Ct. 1465 (2019). Thus, "not every issue must be amenable to common resolution; individual inquiries may be required after the class phase." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016). So, while highly individualized factual questions are not generally suitable for classwide resolution, *see Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011), the mere presence of individualized factual questions does not defeat predominance.

Courts disagree on whether a motion to strike is appropriately used to resolve class certification claims, the scope of analysis for a motion to strike class allegations, and the burden of prevailing on such a motion. *See Jones*, 2019 WL 3554374 at *3 (citing cases). While a motion to strike can efficiently resolve truly meritless class allegations, in most cases defendants hold the information that plaintiffs need to meet their Rule 23 burden of sustaining a class. *Id.* Here, discovery has been stayed pending resolution of the present motion, meaning that Chicago Car has had no opportunity to take class certification discovery. Thus, the Court will consider this motion to strike but will limit its analysis to the face of the pleadings, accepting the pleadings as true and drawing all reasonable inferences in favor of Chicago Car. *Id.* at *3–4. The Court will only strike Chicago Car's class allegations at this early stage "if it concludes that this is an exceptional case where it is clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear

8

that the suit cannot satisfy Rule 23." *Id.* at *4 (internal quotations omitted). The Court does not decide which party bears the burden of proof, as the parties have not briefed the issue and the Court would reach the same result regardless of who bears the burden.

### B. Individualized Questions

Atlanta Wheels makes a two-part argument in support of its motion to strike: first, that a new ruling from the Federal Communications Commission ("FCC") introduces complex and individualized factual questions, and second, that these individualized factual questions necessarily defeat commonality and predominance.

On December 9, 2019, the Chief of the FCC's Consumer and Governmental Affairs Bureau issued a Declaratory Ruling concluding that "online fax services" do not qualify as "telephone facsimile machines." *Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278 & 05-338, Declaratory Ruling ("FCC Order"). Under the FCC Order, only fax advertisements received via traditional fax machines trigger TCPA liability—not faxes received using online fax services. *Id.* ¶ 8. The Order explains that unlike traditional fax machines, which use paper and ink to print all incoming faxes, a user of online fax services must actively choose to print an incoming fax. *Id.* ¶¶ 12–13. Chicago Car states, and Atlanta Wheels does not dispute, that the FCC Order is currently being appealed before the FCC.[3]

The parties contest whether the FCC ruling is binding here. Chicago Car contends that an appealed FCC ruling is not binding, but fails to support this proposition, citing a case that does not conclusively address the issue. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 965 (7th Cir. 2020) (stating that the court must follow the FCC's interpretation of a term where the interpretation has not been appealed, but without discussing how a court should respond to an intra-agency appeal of a ruling.) Atlanta Wheels asserts that the

---
[3] The parties have not elaborated on the procedural posture of the FCC Order.

9

FCC Order may only be appealed to a United States Court of Appeals, and that the Court must therefore follow the ruling. But the Order is currently being appealed to the FCC (not yet to the Court of Appeals) and Atlanta Wheels does not address whether the ruling is stayed pending an intra-agency appeal. Adding to the confusion, Atlanta Wheels filed a notice of supplemental authority for a case where the district court ruled that the FCC Order was not a "final order." *See Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC,* No. 117CV01149JDBJAY, 2020 WL 4937790, at *3 (W.D. Tenn. Aug. 24, 2020) (determining that the FCC Order, pending review before the full FCC, was not a final order.) For the purposes of this ruling only, the Court assumes the FCC Order controls and accepts for the sake of argument that fax advertisements received using online fax services do not trigger TCPA liability.[4]

As outlined in the Complaint, Chicago Car's TCPA class would include all persons with fax numbers who received advertising faxes from Atlanta Wheels, subject to certain qualifications not relevant to this discussion. Atlanta Wheels contends that it will be very complicated to determine whether recipients received faxes using a traditional fax machine or an online fax service. Atlanta Wheels breaks this inquiry into several steps, including whether and when recipients ported their fax numbers to an online fax service, whether the number was linked simultaneously to a traditional fax machine and an online fax service, whether a fax recipient had multiple fax numbers and which devices were connected to which numbers, and the capabilities and configuration of the equipment receiving the faxes.

On the face of the pleadings, however, there is no reason to conclude that complex individualized inquiries are needed to determine whether or not class members used online fax

---

[4] The Court does not resolve whether the FCC Order binds the Court, but only treats the order as binding for purposes of this analysis. To the extent Atlanta Wheels asks this Court to follow the *Advanced Rehab* decision in its holding that the FCC Order is entitled to *Chevron* deference, the Court expresses no opinion because Atlanta Wheels made no *Chevron* argument in its motion.

services. It may be simple to identify the fax equipment that recipients used. One option is to just ask, using affidavit-based proof. The Seventh Circuit has upheld affidavit-based proof in similar class actions. *See Beaton*, 907 F.3d at 1030 (holding that, in a class action, "individualized inquiries can be handled through 'streamlined mechanisms' such as affidavits and proper auditing procedures" and that "Defendants' due process rights are not harmed by such case-management tools"). If appropriately streamlined mechanisms can resolve how faxes were received, then Atlanta Wheels's present objections to commonality and predominance fail. Thus, this is not one of those exceptional cases where, at this early stage, it is clear that no class can be certified.

Atlanta Wheels cites *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019), for the proposition that class member affidavits cannot be used to resolve classwide evidentiary issues. But that is not what *Dancel* says. *Dancel* explicitly acknowledges that affidavits can be appropriately used to resolve classwide evidentiary issues, including "to identify class members after liability is established class-wide" and "to resolve individual merits questions after resolution of class issues." *Id.* at 1009–10. *Dancel* only rejected affidavit-based resolution of a complex factual question requiring individualized *comparative* analysis—whether a person's social media username would identify the user to an ordinary reasonable viewer (pursuant to the Illinois Right of Publicity Act, 765 ILCS 1075/5). *Id.* at 1009. No similarly complex or comparative factual issue is plainly at issue in the present case.[5]

Finally, Atlanta Wheels seeks support from other cases from this District that have stricken class allegations on the face of the complaint. In one case, the court declined to certify a

---

[5] Atlanta Wheels also cites a bevy of out-of-Circuit cases to argue that individualized issues predominate here. The Court has considered these cases and finds no reason to depart from the Seventh Circuit's rulings on the use of streamlined mechanisms to address individualized inquiries in class action cases. The Court further notes that some other Circuits apply a "heightened ascertainability" class certification requirement that the Seventh Circuit has rejected. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).

11

class where the definition included all persons "who expressly requested that he or she no longer receive telemarketing calls . . . [and] thereafter received an additional telephone call." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014). There, the court found that the predominance requirement was not met because the required inquiry—whether and when consent was revoked—was too individualized. *Id.* at 293–94; *see also Tillman v. Hertz Corp.*, No. 16 C 4242, 2019 WL 3231377, at *2 (N.D. Ill. July 18, 2019) (same); *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) (same). The other example Defendant cites involved a putative class of all persons who used a brand of football helmets in high school or college football across 18 states during a 34-year period. *Jones*, 2019 WL 3554374, at *2. The *Jones* court found that individualized inquiries defeated predominance, including whether an individual plaintiff was injured, the cause of the injury, the specific product each plaintiff used, the number of concussions received, the medical care received, and numerous other issues. *Id.* at *5. The Court finds these cases inapposite because here there may be efficient and appropriate ways to determine how faxes were received that do not predominate over the common legal and factual issues.

      As a final matter, Atlanta Wheels alleges that Chicago Car has identified only superficial common questions like "[w]hether defendant violated the TCPA." But the complaint names other common questions that Atlanta Wheels does not address, including "whether defendant engaged in a pattern of sending unsolicited fax advertisements" and "[t]he manner in which defendant compiled or obtained its list of fax numbers." (Compl. ¶ 28.) Further, at this stage, the operative question is whether commonality is impossible on the face of the pleadings. The Court finds it plausible that Chicago Car will be able to establish commonality. Thus, the Court denies Atlanta Wheels' motion to strike.

## CONCLUSION

For the reasons provided above, Atlanta Wheels's motion to dismiss and strike (Dkt. No. 16) is granted in part and denied in part. The request to dismiss the state law claims is granted; Counts II, III, and IV are dismissed without prejudice. The request to strike the class allegations, however, is denied.

ENTERED:

Dated: March 29, 2021

_____
Andrea R. Wood
United States District Judge