**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CAR CARE INC., | ) | |
| on behalf of Plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 19 C 7687 |
| v. | ) | |
| | ) | Magistrate Judge Harjani |
| A.R.R. ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S _UNOPPOSED_ MOTION FOR PRELIMINARY APPROVAL**

Plaintiff Chicago Car Care Inc. ("Plaintiff") respectfully requests that this Court grant the

Motion for Preliminary Approval of Settlement: (i) preliminarily certifying a class for settlement

purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as

Appendix A; and (iii) appointing Chicago Car Care Inc. as a Class Representative and Daniel A.

Edelman and Heather Kolbus of Edelman, Combs, Latturner & Goodwin, LLC as class counsel.

In support of this motion, Plaintiff states as follows:

1.      In this lawsuit captioned _Chicago Car Care Inc. v. A.R.R. Enterprises, Inc._, docket

number 19 C 7687, pending in the United States District Court for the Northern District of Illinois,

Eastern Division ("Litigation"), Plaintiff alleges that A.R.R. Enterprises, Inc. ("ARR" or

"Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"),

by sending unsolicited advertisements via facsimile to Plaintiff and a nationwide class of

individuals and entities.

2.      Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and

factual issues presented in this action, the risks and expense involved in pursuing the litigation to

conclusion, the likelihood of Plaintiff and the class recovering damages, if any, in excess of those obtained through this settlement, the protracted nature of the litigation, and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3.    Counsel for Plaintiff and Defendant have engaged in discovery, investigated the facts and the applicable law, and participated in a mediation session before Magistrate Judge Harjani on October 22, 2021.

4.    Based on a review and analysis following discovery, including ESI and third party discovery, Plaintiff and Defendant entered into the Settlement Agreement, attached hereto as Appendix A.[1]

5.    The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

a.    Class Certification.  The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons with fax numbers, who on June 7, 2017, were sent transmissions in the form of Exhibit A, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

Based on a review of records produced by non-party, Openfax, and after conducting a reasonable investigation of available information and records, including the discovery conducted in this matter, 5,647 transmissions were successfully sent by on or behalf of Defendant which Plaintiff asserts are unsolicited facsimiles advertisements as defined in the TCPA.

6.    Settlement Recovery. Defendant shall deposit $315,000.00 into the Settlement Fund for the benefit of the Settlement Class, Plaintiff and Settlement Class Counsel. If approved by the Court, the Settlement Fund will be distributed as follows:

---

[1]   All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

a.     All costs of notice and administration expenses will be paid from the Settlement Fund.  The Parties anticipate that notice and administration expenses will total to $15,340.00.   Any notice or administrative expenses that exceed $15,340.00, will be paid out of the Settlement Fund. The Settlement Fund less notice and administration expenses is the Net Settlement Fund.

b.     The amount awarded by the Court to Settlement Class Counsel for its attorneys' fees and costs, which fees and costs shall not be sought by Plaintiff, the Settlement Class, or Settlement Class Counsel in an amount no greater than 1/3 of the Net Settlement Fund. By way of example, if the costs of notice and administration are $15,340.00, then plaintiff may seek attorney's fees and costs in the amount of $99,886.66.  This amount is subject to change based on the actual costs of notice and administration but will not exceed 1/3 of the Net Settlement Fund.

c.     The Plaintiff shall receive an award of $10,000.00 as an incentive award for its services as a Class Representative, subject to the Court's approval.  This amount shall be in addition to any amount the Plaintiff may recover as a Settlement Class Member.

d.     The Net Settlement Fund less the incentive award set forth in paragraph 6(c), *supra*, if approved by the Court, and the attorney's fees and costs set forth in paragraph 6(b), *supra*, if approved by the Court, is the Settlement Class Recovery.  The Settlement Class Recovery will be divided *pro rata* among Settlement Class Members who timely submit a valid Claim Form per successful fax transmission to such unique fax number ("Initial Distribution").

If after the Initial Distribution, there is sufficient money remaining in the Settlement Class Recovery to pay each Settlement Class Member who cashed his/her/its Initial Distribution a minimum of $15.00 each, then there shall be a second *pro rata* distribution of the Settlement Class Recovery to the Settlement Class Members who timely submit a valid claim form.

e. All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. Any undistributed amounts remaining in the Settlement Class Recovery after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient(s), recommended by the parties and approved by the Court.

7. <u>Class Notice</u>. The Notice and Claim Form are attached to the Settlement Agreement as <u>Exhibit 1</u>. The Settlement Agreement provides for notice by fax. After a total of 3 unsuccessful attempts to transmit the Notice and Claim Form to a Settlement Class Member by fax, the Settlement Class Administrator shall determine if a valid mailing address is ascertainable for those fax numbers. If a mailing address is ascertainable, the Settlement Class Administrator shall send the Notice and Claim Form by First Class U.S. Mail, with a request for forwarding addresses, to the address associated with the fax numbers identified on the Fax List. The Settlement Class Administrator will check each address against the United States Post Office National Change of Address Database prior to the mailing. In the event a notice is returned as undeliverable and without a forwarding address, the Settlement Class Administrator shall make a reasonable attempt to locate an alternative address and send notice as soon as practicable. In the event that a notice is returned as undeliverable and a forwarding address is provided, the Settlement Class Administrator shall forward any such returned notice to the address provided by U.S. Mail.

The Settlement Class Administrator shall also create, maintain, and host a dedicated settlement website ("Settlement Website"). The Settlement Website shall provide the Settlement Class Members access to copies of the complaint, <u>Exhibit A</u> to the complaint, answer, the Settlement Agreement (excluding exhibits), Notice and Claim Form, this motion for preliminary approval, the preliminary approval order, and Settlement Class Counsel's fee petition.

Settlement Class Counsel will also post the notice and the Settlement Agreement

(excluding exhibits) on their firm's website at their own expense.

The Settlement Agreement provides that five (5) days after entry of the Preliminary Approval Order, Defendant or its Counsel shall provide the Settlement Class Administrator with the Fax List. Within thirty-five (35) days after entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause Notice and Claim Form in the form of Exhibit 1 to be disseminated to all person in the Settlement Class. The persons and entities which comprise the Settlement Class shall have 60 days to submit a Claim Form, opt out, or object to the Settlement, after notice is sent by fax.

8. Class Members' Right to Opt Out. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Class members will have at least 60 days after the Settlement Class Administrator sends Notice to opt out of the Settlement Agreement.

9. Claim Form. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a Claim Form, which will be provided with the Notice sent via fax or U.S. Mail and is available on the Settlement Website. Settlement Class Members will return claim forms via fax, U.S. Mail or on the Settlement Website. After the deadline for the receipt of claim forms expires, the Settlement Class Administrator will determine the number of valid Claim Forms received based on the Fax List.

10. Class Members' Right to Object. Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Settlement Class Counsel and

5

counsel for Defendant a written objection within the time period set by this Court. Any Settlement Class Member who objects to the Settlement Agreement may appear and be heard at the final approval hearing. Settlement Class Members will have at least 60 days after the Settlement Class Administrator sends Notice to object to the Settlement Agreement.

11. Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

a. <u>Rule 23(a)(1) -- Numerosity</u>. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which varies but is about 40. *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class

members sufficient); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, 5,647 facsimiles were successfully transmitted by or on behalf of Defendant using the Openfax broadcast platform. Plaintiff alleges that the faxes were unsolicited facsimile advertisements as defined in the TCPA and were sent on behalf of Defendant. This plainly satisfies the numerosity requirement.

   b.   <u>Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate</u>. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact. Rule 23(b)(3) requires that the questions of law or fact common to the Settlement Class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander Grant & Co. v. McAliste*r, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is

usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the Settlement Class that predominate over any questions affecting only individual class members. The predominant common questions include:

    (1)    Whether Defendant engaged in a pattern of sending unsolicited advertising facsimiles;

    (2)    Whether Defendant had obtained consent from or had a prior business relationship with any of the recipients of the alleged unsolicited advertising facsimiles;

    (3)    Whether Defendant thereby violated the TCPA; and

    (4)    The manner in which Defendant compiled or obtained their list of fax numbers.

The Settlement Class is defined in terms of all persons with fax numbers, who on June 7, 2017, were sent transmission in the form of Exhibit A, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

Several courts have certified class actions under the TCPA. *West Loop Chiropractic & Sports Injury Center, Ltd. v. North American Bancard, LLC*, 16 C 5856, 2018 U.S. Dist. LEXIS 132830 (N.D Ill. Aug. 7, 2018); *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp. 2d 894 (N.D. Ill 2010); *Garrett v. Ragle Dental Lab, Inc.*, 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); *Lampkin v. GGH, Inc.*,

146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Transportation Institute v. Promo Dart, Inc.*, No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); *Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642 (W.D. Wash. 2007); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Airz. (App.) 94, 50 P.3d 844 (2002); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, LLC v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010).

c. <u>Rule 23(a)(3) – Typicality</u>. Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the Settlement Class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the members of the Settlement Class has been subjected to the same practice as the named Plaintiff, namely they are persons with fax numbers, who on June 7, 2017, were sent transmissions in the form of <u>Exhibit A</u>, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

d. <u>Rule 23(a)(4) -- Adequacy of Representation</u>. The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Counsel's qualifications are set forth in Appendix B. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

      e.    Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of Resolving This Controversy.   A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of members of the Settlement Class individually controlling the prosecution of separate claims is small because generally the members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit

> to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994) .

12.     As set forth above, 5,647 transmissions were successfully sent by or on behalf of Defendant using the Openfax broadcast platform, which Plaintiff alleges are unsolicited facsimile advertisements as defined by the TCPA. Plaintiff and Defendant negotiated a comprehensive settlement that confers substantial economic relief to all class members.

13.     Counsel for Plaintiff and the proposed Settlement Class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order in the form of Exhibit 2 to the Settlement Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Chicago Car Care Inc. as a Class Representative and Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iii) directs the dissemination of the Class Notice and a Claim Form in the form of Exhibit 1 to the Settlement Agreement by fax or First Class U.S. Mail as set forth in the Settlement Agreement, and (iv) sets dates for submission of Claim Forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus

11

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

**<u>CERTIFICATE OF SERVICE</u>**

I, Heather Kolbus, hereby certify that on December 22, 2021, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system, which caused notification to be sent by email to the following parties:

Esteban Morales – emorales@mintz.com
Matthew Joseph Novian – mjnovian@mintz.com
Mintz Levin Cohn Ferris Glovsky and Popeo, PC
2029 Century Park East, Suite 3100
Los Angeles, CA 90017

Stephen W. Heil – swh@crayhuber.com
Zachary Gordon Shook – zgs@crayhuber.com
Cray Huber Horstman Heil & VanAusdal LLC
303 West Madison Street, Suite 2200
Chicago, IL 60606

<u>s/ Heather Kolbus</u>
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# **<u>APPENDIX A</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CAR CARE INC., | ) | |
| on behalf of Plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 19 C 7687 |
| v. | ) | |
| | ) | Magistrate Judge Harjani |
| A.R.R. ENTERPRISES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**SETTLEMENT AGREEMENT**

**RECITALS AND DEFINITIONS**

A.     <u>Parties</u>.   Plaintiff Chicago Car Care Inc. ("Plaintiff") individually and as representative of the settlement class of persons defined below in section 5 (the "Settlement Class"), and Defendant A.R.R. Enterprises, Inc.  ("ARR" or "Defendant") enter into this Settlement Agreement ("Settlement Agreement"). Plaintiff and Defendant are collectively referred to as the Parties.

B.     <u>Nature of Case</u>.   In the lawsuit, captioned  *Chicago Car Care Inc. v. A.R.R. Enterprises, Inc., et al.,* United States District Court, Northern District of Illinois, Eastern Division, docket number 1:19-cv-07687, (the "Litigation"), Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), by sending unsolicited advertisements via facsimile to Plaintiff and a nationwide class of individuals and entities.

C.     <u>Denial of Liability</u>.  Defendant denies violating the TCPA, and further denies any liability to Plaintiff and the Settlement Class for the claims alleged. Defendant desires to settle the

1

claims solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims, known or unknown, asserted or unasserted, actual or contingent, that have been or might have been asserted by the Plaintiff or the Settlement Class against it concerning the matters alleged in the complaint in the Litigation.

D.  "Settlement Class Counsel" means Edelman, Combs, Latturner & Goodwin, LLC.

E.  "Settlement Class" means all persons with fax numbers, who on June 7, 2017, were sent transmissions in the form of Exhibit A, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

F.  "Plaintiff" means Chicago Car Care Inc.

G.  "Released Parties" means, Defendant and its predecessors, parents, subsidiaries, affiliates, principals, successors, assigns, officers, members, directors, insurers, employees, (in such capacities as they relate to the actions that are the subject of the Litigation). The Parties expressly agree that all of these persons and entities that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

H.  "Settlement Class Administrator" means Class-Settlement.com.  The Settlement Class Administrator shall issue notice to the Settlement Class Members and to administer the settlement.

I.  "Settlement Class Member(s)" means Plaintiff and any member of the Settlement Class who does not opt out and is not otherwise excluded from the Settlement Class by the Court.

J.  "Released Claims" means any and all causes of action, suits, claims, or demands, in law or in equity, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen at this time, or at the time the claims asserted in the Litigation arose, which Plaintiff

or any other Settlement Class Members now have, did have, or may have against the Released Parties, whether or not alleged in the Litigation, and any similar legal theory related to or arising from the receipt of unsolicited advertisements in the form of <u>Exhibit A</u> by facsimile. This includes any and all claims that were asserted or could have been asserted against the Released Parties in the Litigation.

K. <u>Plaintiff's Desire to Settle</u>. Plaintiff, individually and on behalf of the Settlement Class (as defined above), desires to settle its respective claims and class claims against Defendant, having taken into account through Plaintiff's counsel the risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this settlement and the likelihood that further litigation will be protracted and expensive. Plaintiff represents and warrants that it owned or leased the facsimile machines which received the faxes at issue in the Litigation at the time the faxes were received. The warranties and representations made in this Settlement Agreement survive the execution of this Settlement Agreement.

L. <u>Investigation</u>. Plaintiff's counsel state that they have investigated the facts and the applicable law. The Parties also participated in a settlement conference before Magistrate Judge Harjani on October 22, 2021. Based on the foregoing, and upon an analysis of the benefits afforded by this Settlement Agreement, Plaintiff's counsel consider it to be in the best interests of the Settlement Class to enter into this Settlement Agreement.

M. <u>Agreement</u>. In consideration of the foregoing and other valuable consideration, Plaintiff, Plaintiff's counsel and Defendant agree to settle the claims of the Plaintiff and the Settlement Class, the Released Claims, subject to the Court's approval, on the following terms and conditions.

## **TERMS**

1.     <u>Incorporation of Recitals and Definitions</u>.  The recitals and definitions set forth above are incorporated into this Settlement Agreement.

2.     <u>Effective Date</u>.  The Settlement Agreement shall become effective (hereinafter the "Effective Date") upon the occurrence of all of the following: (a) the Court's entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u>, and (b) the expiration of five business (5) days after the date the Final Approval Order becomes final and non-appealable.

3.     <u>Certification of Settlement Class</u>.  Solely for the purposes of settlement, the parties stipulate to the certification of the Settlement Class. The Parties agree to propose that Plaintiff Chicago Car Care Inc. shall be appointed a class representative and that Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner & Goodwin, LLC shall be appointed Settlement Class Counsel. The Settlement Class shall be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Defendant does not consent to certification of the Settlement Class for any purpose other than to effectuate this settlement of the Litigation. If this Settlement Agreement is not approved by the Court or is terminated pursuant to its terms or for any other reason, or is disapproved in a final order by any court of competent jurisdiction, (a) any order certifying the Settlement Class and all preliminary and/or final findings or stipulations regarding certification of the Settlement Class shall be automatically vacated upon notice to the Court of this Settlement Agreement's termination or disapproval; (b) the Litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither this Settlement Agreement, nor any of its Exhibits, nor any other associated settlement

Case: 1:19-cv-07687 Document #: 72 Filed: 12/22/21 Page 19 of 73 PageID #:587

document may be used in seeking class certification; and (c) Defendant reserves all procedural or substantive rights as of the date of execution of this Settlement Agreement.

4. <u>Identification of Settlement Class Members</u>. Defendant stipulates that, based on a review of the records available to it, and after conducting a reasonable investigation of available information and records, including from discovery conducted, that 5,647 transmissions were successfully made by or on behalf of Defendant using the Openfax broadcast platform, which Plaintiff asserts are unsolicited facsimile advertisements as defined in the TCPA. Defendant agrees to provide to the Settlement Class Administrator the list of 5,647 recipients (the "Fax List"); Plaintiff also obtained this list from Openfax through discovery in the Litigation.

5. <u>Relief to Plaintiff and the Settlement Class</u>. The following relief shall be provided to Plaintiff and the Settlement Class, subject to the Court's approval:

    a.    Defendant shall create a $315,000.00 Settlement Fund ("Settlement Fund") which shall be distributed as set forth below. The entire Settlement Fund will be paid out and there will be no reverter to Defendant;

    b.    Notice and administration expenses will be paid from the Settlement Fund. The Parties anticipate that notice and administration expenses will total to $15,340.00. Any notice or administrative expenses, including any beyond $15,340.00, will be paid out of the Settlement Fund. The Settlement Fund less notice and administrative expenses is the Net Settlement Fund; and

    c.    After the notice and administration expenses are deducted from the Settlement Fund, the Net Settlement Fund shall be apportioned as follows:

        i.    Subject to Court approval, $10,000.00 shall be paid to Plaintiff as an incentive award in recognition of its services as class representative, in addition to its recovery as a class member;

        ii.    The amount awarded by the Court to Settlement Class Counsel for its attorney's fees and costs, which fees and costs shall not be sought in an amount greater than 1/3 of the Net Settlement Fund;

    d.    The Net Settlement Fund less the incentive award set forth in section 5(c)(i) of this Settlement Agreement and the attorney's fees and costs

5

award set forth in section 5(c)(ii) of this Settlement Agreement is the "Settlement Class Recovery"; and

i.    Each member of the Settlement Class who submits a valid claim form will receive a check for a pro rata distribution of the Settlement Class Recovery ("Initial Distribution") per successful transmission. In calculating the pro rata distribution, the total number of successful transmissions shall be divided into the Settlement Class Recovery to yield a "share." Each share shall permit a Settlement Class Member to be paid by check a cash benefit equal to the net of the Settlement Class Recovery divided by the total number of shares allocated to all Settlement Class Members.

ii.    If after the Initial Distribution there is sufficient money remaining in the Settlement Class Recovery to pay each Settlement Class Member who cashed his/her/its Initial Distribution a minimum of $15.00 each, then there shall be a second pro rata distribution of the Settlement Class Recovery to the Settlement Class Members (the "Second Distribution") to be calculated in the same manner as set forth in section 5(d)(i) of this Settlement Agreement. The Second Distribution shall occur 30 days after the void date on the Initial Distribution checks expire.

iii.    If after the Initial Distribution there is not sufficient money remaining in the Settlement Class Recovery to make a Second Distribution as provided in section 5(d)(ii) of this Settlement Agreement, such money remaining in the Settlement Class Recovery shall be distributed to one or more *cy pres* charities, subject to court approval, consistent with section 10 below.

iv.    All pro rata distribution check payments of the Settlement Class Recovery, whether Initial Distributions or Second Distributions or otherwise, shall be mailed via first-class mail, consistent with section 6 below.

6.    Any award of attorneys' fees and costs and incentive award to Plaintiff which are approved by the Court may be distributed to them within fourteen (14) days following the Effective Date. Within thirty (30) days following the Effective Date, the Settlement Class Administrator shall distribute the Settlement Class Recovery to the Settlement Class Members who have submitted timely and valid claim forms in accordance with this Settlement Agreement. In the

event that (i) the Settlement Agreement is terminated pursuant to its terms; (ii) Defendant withdraws from the Settlement Agreement; (iii) the Settlement Agreement does not become effective as set forth in section 2 of this Settlement Agreement; or (iv) the Final Approval Order is reversed, vacated, or modified in any material respect which is not mutually acceptable to the Parties, then Settlement Class Counsel or the Settlement Class Administrator shall return within three (3) business days following the event all funds paid or otherwise received from the Settlement Fund, less any reasonable costs (which shall not exceed $15,340.00) that were incurred before any of the aforementioned events occurred and in good faith to issue notice to the Settlement Class Members to Defendant's Counsel, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

7.      Settlement Class Members shall have sixty (60) days to submit a claim form, to opt out or object to the proposed settlement, after notice is initially sent by fax.

8.      Settlement Class Administrator costs associated with notice, administration and distribution of the Settlement Class Recovery shall be paid as set forth in section 5(b) of this Settlement Agreement.  Defendant shall advance the costs of notice and administration up to a maximum of $15,340.00 from the Settlement Fund to the Settlement Class Administrator 14 days after entry of the Preliminary Approval Order.

9.      The Settlement Class Recovery checks issued to the Settlement Class Members (both Initial Distributions and Second Distributions, if any) will be void after 60 days from the date of issuance. Any Settlement Class Member who does not deposit or negotiate the settlement payment check issued to such Settlement Class Member within 60 days of the date of issuance of the settlement payment check, agrees that such Settlement Class Member rescinds and withdraws

7

his, her or its claim for monetary compensation under this Settlement Agreement but remains a member of the Settlement Class and is bound by the terms of this Settlement Agreement.

10.  <u>Undistributed Settlement Funds</u>.  Within thirty (30) days after the last void date of all Settlement Class Recovery checks (both Initial Distributions and Second Distributions, if any) issued to Settlement Class Members, the Settlement Class Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed amounts remaining in the Settlement Class Recovery. Any such unclaimed or undistributed amounts remaining in the Settlement Class Recovery after all payments required under this Settlement Agreement have been made shall be distributed to one or more *cy pres* charities selected by the parties, subject to court approval.  The parties shall identify and submit a memorandum in support of their respective *cy pres* recipient at the time of the final approval of the settlement.  In no event shall undistributed Settlement Class Recovery funds revert to Defendant.  Any distribution to the court approved *cy pres* recipient(s) shall occur no earlier than forty-five (45) days after expiration of the void dates on all settlement checks (both Initial Distributions and Second Distributions, if any) issued to Settlement Class Members.

11.  <u>Release</u>.  On the Effective Date, Plaintiff and the Settlement Class Members who have not opted out or been otherwise excluded from the Settlement Class shall be deemed to have fully and finally released and discharged the Released Parties from any and all liability for the Released Claims.

This Settlement Agreement may be pleaded as a full and complete defense by each and any of the Released Parties to any action, suit, or other proceeding that may be instituted or prosecuted with respect to the Released Claims. Without admitting that California law or the laws of any other

state apply to this Settlement Agreement or that the release provided herein by Plaintiff and the

Settlement Class is a general release, the Parties agree that upon the Effective Date, the Settlement

Class shall be deemed to have waived and shall have expressly waived the provisions and benefits

of California Civil Code §1542 relating to the Released Claims, which section provides:

> A general release does not extend to claims that the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release and that, if
> known by him or her, would have materially affected his or her settlement with the
> debtor or released party.

Further, Plaintiff and the Settlement Class expressly waive any and all provisions and rights or

benefits relating to the Released Claims which may be conferred upon them by any law, statute,

ordinance, rule, order, or regulation which is similar, comparable, or equivalent to California Civil

Code §1542. Further, Plaintiff and the Settlement Class understand and acknowledge the

significance of these waivers and relinquishment of California Civil Code §1542 and similar

federal and state statutes, ordinances, rules, regulations, orders, or law relating to limitations on

releases. In connection with such waivers and relinquishment, Plaintiff and the Settlement Class

understand and acknowledge that they are aware they may hereafter discover facts in addition to,

or different from, those facts that they know or believe to be true with respect to the subject matter

of the Litigation, and this Settlement Agreement. Nonetheless, it is the intention of Plaintiff and

the Settlement Class to fully, finally, and forever release and discharge each and every of the

Released Parties from all Released Claims, and in furtherance of such intention, the release and

discharge of each and every of the Released Parties from all Released Claims will be and remain

in effect notwithstanding the discovery by any person of, or existence of, any such additional or

different facts. It is the intent of the Parties that this Settlement Agreement will fully, finally, and

forever dispose of the Litigation, which shall be dismissed with prejudice, and any and all Released Claims against each and any of the Released Parties.

12. If this Settlement Agreement is not approved by the Court or for any reason does not become effective as set forth in section 2, it shall be deemed null and void and shall be without prejudice to the rights of the parties hereto and shall not be used in any subsequent proceedings in this or any other litigation, or in any manner whatsoever.

13. <u>Attorneys' Fees, Notice Costs and Related Matters</u>. The Settlement Class Administrator will administer the Net Settlement Fund and the Settlement Class Recovery for the benefit of the Settlement Class. Settlement Class Counsel will request approval from the Court for attorneys' fees in an amount not to exceed 1/3 of the Net Settlement Fund as set forth in section 5(c)(ii) of this Settlement Agreement. Settlement Class Counsel will not request additional fees or costs from Defendant other than the above-referenced sums. Settlement Class Counsel shall file a fee petition at least thirty (30) days prior to the deadline set by the Court in the Preliminary Approval Order to submit claims, opt out, or object to the Settlement Agreement. Settlement Class Counsel shall file an accounting detailing the disbursement of the Net Settlement Fund and the Settlement Class Recovery at least thirty (30) days following any cy pres payments or on the date set by the Court in the Final Approval Order.

14. <u>Notice</u>. Within 5 days of entry of the Preliminary Approval Order, Defendant shall provide the Settlement Class Administrator with the Fax List in MS Word or Excel format. The Fax List shall also contain the number of transmissions sent to each unique fax number and any names of the Settlement Class Members. Within 35 days following entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause the Notice and Claim Form in the

form of <u>Exhibit 1</u> (the "Notice and Claim Form") to be sent to all persons in the Settlement Class as set forth herein. Such Notice and Claim Form shall comport with Rule 23 of the Federal Rules of Civil Procedure.

15. The Class Notice was developed in consultation with the Settlement Class Administrator and includes:

a. <u>Facsimile Notice</u>. Subject to the Court's approval, within thirty-five (35) days following entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause the Notice and Claim Form to be sent to the facsimile numbers on the Fax List. The Settlement Class Administrator shall perform all steps deemed appropriate by the Settlement Class Administrator and reasonable by the Parties in an attempt to identify complete and current facsimile information for the Settlement Class Members. The Settlement Class Administrator shall make at least 2 additional attempts to transmit the Notice and Claim Form by facsimile to those numbers where the initial transmission failed.

b. <u>Mail Notice</u>. After a total of three unsuccessful attempts to transmit the Notice and Claim Form to a Settlement Class Member by fax, the Settlement Class Administrator shall determine if a valid mailing address is ascertainable for those fax numbers on the Fax List. If a mailing address is ascertainable, the Settlement Class Administrator shall mail the Notice and Claim Form to the Settlement Class Member via First Class U.S. mail, with a request for forwarding addresses, to the address ascertained by the Settlement Class Administrator that is associated with the fax number of the Settlement Class Member identified on the Fax List. The Settlement Class Administrator shall check each address against the United States Post Office National Change of Address Database ("NCOA") prior to mailing. In the event a Notice and Claim

11

Form is returned as undeliverable and a forwarding address is provided, the Settlement Class Administrator shall forward any such returned Notice and Claim Form to the address provided as soon as practicable. In the event that a Notice and Claim Form is returned as undeliverable and without a forwarding address, the Settlement Class Administrator shall make a reasonable attempt to locate an alternative address and/or cure the address deficiency and mail the notice as soon as practicable.

      c.    <u>Settlement Website</u>. The Settlement Class Administrator shall create, maintain, operate and host a dedicated website to assist in the administration of this Settlement Agreement (the "Settlement Website"). Settlement Class Members may also provide updated or corrected address information by fax to the Settlement Class Administrator. The Settlement Website shall provide the Settlement Class Members access to copies of the complaint, <u>Exhibit A</u> to the complaint, answer, this Settlement Agreement, without exhibits, the Notice and Claim Form, the Motion for Preliminary Approval, the Preliminary Approval Order, and the Settlement Class Counsel's fee petition set forth in section 13 of this Settlement Agreement. The name of the Settlement Website shall include "ARR." Settlement Class Counsel will also post the Notice but not the Claim Form, <u>Exhibit A</u> to the complaint and the Settlement Agreement (excluding exhibits), on their firm's website at the sole expense of Settlement Class Counsel. Settlement Class Counsel or the Settlement Class Administrator shall provide any Settlement Class Member who contacts either of them and requests a copy of the Notice and Claim Form (<u>Exhibit 1</u>). Settlement Class Members will have sixty (60) days from the date the Notice and Claim Form is initially sent by fax to submit a Claim Form to the Settlement Class Administrator.

Settlement Class Counsel and/or the Settlement Class Administrator shall retain all documents and records generated during the administration of the settlement including records of notice given to Settlement Class Members, returned mail, records of undelivered mail, Claim Forms, and payment to Settlement Class Members for a period of one year following the issuance of the Final Approval Order, and the expiration of all deadlines for appeal therefrom. Defendant may inspect such documents, upon reasonable request by its counsel. The Fax List and all other documents and records generated during the administration of the settlement shall be used solely for purposes consistent with notice and administration of this settlement and for no other purpose.

Defendant and its Counsel will be responsible for serving the required CAFA Notice within ten (10) days after the filing of the Preliminary Approval Motion at its own expense. Defendant's counsel shall file a Notice of CAFA Compliance declaration within thirty-five (35) days after entry of the Preliminary Approval Order.

The Settlement Class Administrator shall prepare and execute a declaration attesting to compliance with the notice requirements of this Settlement Agreement and the Preliminary Approval Order. Such declaration shall be provided to Settlement Class Counsel and counsel for Defendant, and filed with the Court on the date set forth in the Preliminary Approval Order.

16. <u>Claim Validation</u>. The Settlement Class Administrator shall match the fax number provided by the Settlement Class Member on a returned Claim Form to the fax numbers on the Fax List. The Settlement Claims Administrator shall also determine whether the claim is a duplicate, whether the Claim Form is signed and examine the claim form for completeness and validity. If the fax number(s) does not match, then the Settlement Class Administrator shall follow-up with the Settlement Class Member and inquire if such Settlement Class Member employed

13

other fax numbers during the Class Period (to ascertain if any different fax number is a number on the Fax List), in an effort to determine whether the claim is a valid claim.

If the fax number or fax numbers provided on a Claim Form do not match a fax number on the Fax List, and the follow-up with the Settlement Class Member has not resolved the issue, the Settlement Class Administrator may disallow the claim. If the Settlement Class Administrator intends to disallow a claim, the Settlement Class Administrator must communicate its intention to the Settlement Class Member, Settlement Class Counsel, and counsel for Defendant, and allow Settlement Class Counsel and counsel for Defendant an opportunity to investigate the basis for disallowing the claim before a claim is disallowed. In the event the Parties disagree as to the validity of any Claim Form or whether to disallow a claim, then Settlement Class Counsel will present the disputed claim to the Court for resolution; counsel for Defendant shall also have an opportunity to address the disputed claim with the Court. Settlement Class Members may have two (2) weeks following the deadline to submit claims forms or such other time as agreed upon by the Parties, to cure any deficient or otherwise invalid claims. Any decision to disallow a claim must be determined at least two (2) weeks prior to the time plaintiff has to file a memorandum in support of final approval of the settlement.

17.     a.     <u>Initial Distribution</u>. Settlement Class Members submitting timely and valid Claim Forms and who do not opt out shall be paid a pro rata share per fax transmission of the Settlement Class Recovery in accordance with this Settlement Agreement for each unique facsimile number as set forth in section 5(d)(i).

        b.     <u>Second Distribution</u>.   If there is sufficient money remaining in the Settlement Class Recovery to pay at least $15.00 to each Settlement Class Member who timely

cashed his/her/its Initial Distribution, then such remaining Settlement Class Recovery will be distributed on a pro rata basis to those Settlement Class Members who cashed his/her/its Initial Distribution as the Second Distribution set forth in section 5(d)(ii).

        c.    <u>W-9 Collection</u>.  In the event Settlement Class Members will recover more than $599.99, then such Settlement Class Members may be required to submit a W-9 form. The W-9 forms will be issued to Settlement Class Members by the Settlement Class Administrator as required within twenty-one (21) days after entry of the Final Approval Order and before any settlement checks are issued. W-9 forms will also be available to submit on the Settlement Class Administrator's secure settlement website.  Settlement Class Members will have thirty (30) days to respond to a request to complete a W-9 form. If a Settlement Class Member does not submit a W-9 form, the Settlement Class Administrator will reduce their settlement payment to $599.99.  If W-9 forms need to be collected, certain dates set forth in sections 6, 9, and 10 are reset and calculated as follows: within thirty (30) days following the expiration of time for Settlement Class Members to complete a W-9 form, the Settlement Class Administrator shall distribute the Settlement Class Recovery to the Settlement Class Members who have submitted valid Claim Forms in accordance with section 16 of this Settlement Agreement;  settlement checks to the Settlement Class Members will be void sixty (60) days from date of issuance; and within thirty (30) days following the void date on the Settlement Class Members' checks, any uncashed checks or unclaimed or undistributed funds, the disposition of which will be determined by the Court, will be disbursed.

        18.    <u>Right to Object</u>.  Any Settlement Class Member may object to the Settlement

Agreement and appear in person or through counsel, at his, her or its own expense. The deadline to object shall be set by the Court in the Preliminary Approval Order and the Parties shall propose that it be filed in Court and served by U.S. mail postmarked to Settlement Class Counsel and Defendant's Counsel sixty (60) days after notice is initially sent by fax. Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing a copy of the objection to Settlement Class Counsel and Defendant's Counsel. Any objection must include: (a) the name (or business name, if the objector is an entity), address, and fax number to which the fax(es) were sent; (b) a signed statement of the objection to the Settlement Agreement; (c) an explanation of the legal and factual basis for the objection; and (d) documentation, if any, to support the objection.

19.     Right of Exclusion.  The Notice shall contain information about how a Settlement Class Member may request to be excluded from the Settlement Agreement. The deadline to request to be excluded from the Settlement Agreement shall be set by the Court in the Preliminary Approval Order and the Parties shall propose that it be at least sixty (60) days after notice is sent. All persons in the Settlement Class who properly submit a timely written request for exclusion from the Settlement Class shall be excluded from the Settlement Class and shall have no rights as Settlement Class Members pursuant to this Settlement Agreement. A request for exclusion must be in writing and state the name, address, and fax number (to which the fax(es) were sent) of the person(s) or entity seeking exclusion. Each request must also contain a signed statement providing that: "I/we hereby request that I/we be excluded from the proposed Settlement Class in the Litigation." The request must be mailed to Settlement Class Counsel or the Settlement Class Administrator at the address provided in the notice and postmarked on such date as set by the

16

Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the notice, or that is not postmarked within the time specified, shall be invalid and the person(s) serving such a request shall remain a Settlement Class Member and shall be bound by the terms of the Settlement Agreement, if approved. Settlement Class Members shall have sixty (60) days from the date notice is initially sent by fax to opt out of the Settlement.

20.     <u>Preliminary Approval</u>.  As soon as practicable after execution of this Settlement Agreement, and by December 22, 2021, or such time as ordered by the Court, Settlement Class Counsel shall file a Motion for Preliminary Approval of this Settlement Agreement and shall present such motion to the Court requesting the entry of a Preliminary Approval Order substantially in the form of <u>Exhibit 2</u> or in such other form which is mutually acceptable to the Parties.

21.     <u>Final Approval</u>.  Settlement Class Counsel shall file a memorandum in support of final approval of the settlement, which shall include Settlement Class Counsel's request for an award of attorneys' fees and costs, at least seven (7) days prior to the date by which the Court set a Hearing on Final Approval of the Settlement.  The Parties shall request the Court to enter a Final Approval Order substantially in the form of <u>Exhibit 3</u>, or in another form which is mutually acceptable to the Parties. The Final Approval Order shall provide the Parties will take the actions required to fulfill their obligations under the Settlement Agreement.  Pursuant to the Class Action Fairness Act, the Final Approval Order shall not be entered until the expiration of at least ninety (90) days from the date the Preliminary Approval Order was entered (unless otherwise ordered by the Court). Entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u> or in another

form which is mutually acceptable to the Parties is a condition precedent to this Settlement Agreement becoming fully effective. In the event a Final Approval Order substantially in the form of Exhibit 3 or in another form which is mutually acceptable to the Parties is not entered then this Settlement Agreement shall be null and void and is rescinded and the Preliminary Approval Order and any other orders entered by the Court in connection with this settlement shall be vacated and the Parties shall be returned to the position they were in prior to the execution of this Settlement Agreement and the Litigation shall proceed as though this Settlement Agreement was never executed.

22.     The fact that the Court may require non-material changes to documents attached as Exhibits 1 through 3 does not invalidate this Settlement Agreement.

23.     Release of Attorneys' Lien.  In consideration of this Settlement Agreement, Settlement Class Counsel hereby waives, discharges and releases the "Released Parties," as defined in section G of the Recitals and Definitions above, of and from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Settlement Class Counsel in connection with the Litigation, other than the amount awarded by the Court as specified above.

24.     Delivery of Net Settlement Fund.  Defendant shall wire or mail a check in the amount of the Settlement Fund less the amount advanced pursuant to section 8 of this Settlement Agreement for notice and administration costs to the Settlement Class Administrator within ten (10) days after the Effective Date. Once the payment is made in accordance with this paragraph, Defendant shall have no further payment obligation to Plaintiff, the Settlement Class, or Settlement Class Members and Defendant shall have no obligation or duty to monitor, supervise, or control disbursements from the Settlement Fund.

18

25. <u>Dismissal Order</u>.  Within five (5) calendar days of Defendant delivering the Settlement Fund as set forth in section 24 of this Settlement Agreement or on such date ordered by the Court, the Parties will file a stipulation of dismissal in the Litigation dismissing the claims of the Settlement Class Members against Defendant with prejudice and without fees or costs except those costs provided herein. In the event that Defendant fails or refuses to deliver the Settlement Fund as set forth in section 24 of this Settlement Agreement, Defendant agrees that at the option of Settlement Class Counsel, the Final Approval Order may be vacated pursuant to Fed. R. Civ. P. 60(b), this Agreement shall be rescinded, and the Litigation shall be reinstated as if this agreement never existed.

26. <u>Termination of Agreement</u>.  ARR shall have the unilateral right to terminate this Agreement, declare it null and void and have no further obligation under this Agreement by providing written notice to Plaintiff, Settlement Class Counsel and the Court before entry of the Final Approval Order if more than 56 persons within the Settlement Class timely and validly exclude themselves from the settlement set forth in this Agreement.

27. <u>Applicable Law</u>.  This Settlement Agreement shall be governed by and interpreted in accordance with the state law of the State of Illinois.

28. <u>Miscellaneous Provisions</u>.  The Parties and their attorneys agree to cooperate fully with one another in seeking approval of this Settlement Agreement, and to use their best efforts to effect the consummation of this Settlement Agreement and the settlement provided for herein. Whether or not this Settlement Agreement and the settlement contemplated hereunder are consummated, this Settlement Agreement and the proceedings had in connection herewith shall in

no event be construed as, or be deemed to be, evidence of an admission or concession on the part of Defendant of any liability or wrongdoing whatsoever.

29.     <u>Benefit of this Settlement Agreement</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiff, the Released Parties and Settlement Class Members, and each of their respective successors and personal representatives, predecessors, affiliates, heirs, executors and assigns. It is expressly understood by the Parties that the individuals or entities of the Released Parties that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

30.     <u>Authority</u>.  The Parties hereby represent to one another that they have full power and authority to enter into this Settlement Agreement and carry out their obligations hereunder.

31.     <u>Entire Agreement</u>.  Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Settlement Agreement and may not be amended, modified or changed orally.

32.     <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by facsimile or e-mail shall be deemed legal and binding for all purposes.

33.  Headings.  The headings in this Settlement Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Settlement Agreement, nor to control or affect meanings, constructions or the effect of the same.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered by their duly authorized representatives on the date last written below.

**PLAINTIFF**
*Chicago Car Care Inc.*

By: _____

Its: ___Presiden T_____

Dated: __Dec 21 2021_____

**DEFENDANT**
*A.R.R. Enterprises, Inc.*

By: _____

Its: _____

Dated: _____

**SETTLEMENT CLASS COUNSEL**

_Heather Kolbus_____
Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
*Counsel for Plaintiff and the Settlement Class*

Dated: __December 21, 2021____

**DEFENDANT'S COUNSEL**

_____
Esteban Morales
Matthew J. Novian
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067

21

33. <u>Headings</u>. The headings in this Settlement Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Settlement Agreement, nor to control or affect meanings, constructions or the effect of the same.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered by their duly authorized representatives on the date last written below.

**PLAINTIFF**
*Chicago Car Care Inc.*

By:_____

Its: _____

Dated:_____

**DEFENDANT**
*A.R.R. Enterprises, Inc.*

By:_____

Its:_____CFO / Owner_____

Dated:___12/21/2021_____

**SETTLEMENT CLASS COUNSEL**

_____

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
*Counsel for Plaintiff and the Settlement Class*

Dated:_____

**DEFENDANT'S COUNSEL**

_____

Esteban Morales
Matthew J. Novian
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067

21

(310) 586-3200

Dated: 12-21-21

22

# **<u>EXHIBIT 1</u>**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT:**

## *CHICAGO CAR CARE INC. v. A.R.R. ENTERPRISES, INC., No. 19-CV-7687*

*THIS IS **NOT** A SOLICITATION.*
*THE SENDING OF THIS NOTICE BY FACSIMILE HAS BEEN APPROVED BY THE COURT.*

I.  **THE LAWSUIT:** Chicago Car Care Inc. ("Plaintiff") sued A.R.R. Enterprises, Inc. ("ARR" or "Defendant") alleging that it was sent an unsolicited fax advertisement promoting ARR's goods or services ("Litigation"). Plaintiff alleged that these faxes violated the Telephone Consumer Protection Act ("TCPA"). ARR denies these allegations, but agreed to settle to avoid the costs and uncertainties of litigation. As part of the proposed settlement, ARR does not admit to any wrongdoing and continues to deny the claims and allegations asserted against it by Plaintiff.

The Litigation is now pending before Magistrate Judge Sunil R. Harjani in the United States District Court for the Northern District of Illinois.

II.  **WHO IS INCLUDED:** The records produced in discovery and available to ARR show that you may have been sent one or more faxes by or on behalf of ARR promoting its goods or services. The faxes were sent on June 7, 2017. Specifically, the Court certified a "Settlement Class" of: All persons with fax numbers who, on June 7, 2017, were sent transmissions in the form of <u>Exhibit A</u>, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

III.  **THE PROPOSED SETTLEMENT:** ARR has agreed to fund a $315,000 Settlement Fund to resolve the Litigation. Before making payments to Settlement Class Members, the Settlement Fund will be used to pay notice and administrative expenses (which is not expected to exceed $15,340), a $10,000 incentive award to Plaintiff and Settlement Class Counsel's fees and costs (estimated at $99,886.66, which is 1/3 of the Net Settlement Fund). Each Settlement Class Member who timely submits a valid claim will receive a *pro rata* share of the Settlement Class Recovery per unique fax transmission. Your share of the Settlement Class Recovery depends on how many Settlement Class Members submit Claim Forms. This notice is being sent to approximately 5,647 persons and/or entities which comprise the Settlement Class.

IV.  **WHO REPRESENTS YOU:** The Court appointed Daniel A. Edelman and Heather Kolbus from Edelman, Combs, Latturner, & Goodwin, LLC to represent the Settlement Class as Settlement Class Counsel. They will be compensated out of the Settlement Fund. You may review Class Counsel's fee petition, which will be filed with the Court and will be posted to the settlement website maintained by the Settlement Class Administrator, and which requests compensation from the Settlement Fund as set forth in Section III, above.

V.  **YOUR LEGAL RIGHTS AND OPTIONS:**

**(1)  Submit a Claim Form**. You may complete and mail the attached Claim Form postmarked no later than **DATE, 2022** to qualify for a payment. The Claim Form must be mailed to: *Chicago Car Care v. ARR Enterprises, c*/o Class-Settlement.com, PO Box 9009, Hicksville, NY 11802-9009. You may also submit a Claim Form online by going to the Settlement Website at [ www.settlementwebsite ] and following the directions.

Claim Forms submitted online must be received by **DATE, 2022** to qualify for a payment. The value of each individual settlement payment cannot be determined until after the deadline to submit a claim has passed and all claims have been verified. Under federal fax laws, if you receive a payment in excess of $599.99, the person making the payment is required to obtain a form W-9 from you. It is a 1-page form that asks for basic identification information. If you are entitled to recover a payment in excess of $599.99, then you must also submit a complete W-9 form, which will be sent to you after the Final Approval Hearing. W-9 forms will also be available to submit on the Settlement Website at [www.settlementwebsite.com].  If you are entitled to recover payment in excess of $599.99 and you do not submit a completed W-9 form, then your recovery will be reduced to $599.99.

**(2)  Exclude Yourself.** If you do not wish to participate in the Settlement you may exclude yourself from it by **DATE, 2022** by sending (via US Mail) a letter to the Class Administrator, *Chicago Car Care v. ARR Enterprises, c/o Class-Settlement.com,* PO Box 9009, Hicksville, NY 11802-9009. The Notice of Exclusion must state your full name or your company's name, address, the fax number(s) to which you were sent the fax(es), and a statement that you wish to be excluded from the Settlement Class in the

Litigation. The Notice of Exclusion must be postmarked no later than **DATE, 2022**. If you exclude yourself from the Settlement you will not receive a payment and you will not release any claims against ARR or the Released Parties.

(3) **Object.** If you do not exclude yourself, you can file an objection, either on your own or through an attorney, explaining why you think the Court should not approve the settlement. The objection must contain your full name (or business name if the objector is an entity) and address; the fax number(s) to which you were sent the fax(es); a signed statement of your objection to the Settlement Agreement; an explanation of the legal and factual basis for the objection; documentation, if any, to support your objection. The objection must be filed by **DATE, 2022** with (1) the Clerk of the United States District Court, Northern District of Illinois, 219 S. Dearborn, Chicago, IL 60604; and sent to (2) the Settlement Class Administrator, (3) Edelman, Combs, Latturner, & Goodwin, LLC (36608), 20 S. Clark St., Suite 1500, Chicago, IL 60603; and (4) Esteban Morales, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 2029 Century Park East, Suite 3100, Los Angeles, CA 90067.

(4) **Do Nothing.** If you do nothing you will not receive a monetary recovery, but you will be bound by all the terms of the Settlement Agreement. That means you cannot sue, continue to sue, or be part of any other lawsuit against ARR regarding the TCPA claims that are subject to the class settlement.

**VI.** **WHAT AM I GIVING UP UNDER THE SETTLEMENT?** If the settlement becomes final, you will be releasing ARR and the Released Parties for the Released Claims, which includes, but is not limited to, claims you may have relating to your receipt of unsolicited advertising faxes in the form of <u>Exhibit A</u> and claims that were asserted or could have been asserted in the Litigation. The Released Claims are fully explained in the Settlement Agreement, available on the Settlement Website at [ www.settlementwebsite ] or Settlement Class Counsel's website at www.edcombs.com.

**VII.** **FINAL APPROVAL HEARING:** The Court has scheduled a Final Approval Hearing before Magistrate Judge Harjani on **DATE, 2022 AT TIME A.M**. in Courtroom 1858 of the United States District Court for the Northern District of Illinois by Telephone [dial in information for hearing] or at 219 S. Dearborn St., Chicago, IL 60604. You or your attorney may attend this hearing if you desire and request to address the Court regarding any matters relating to this Settlement. The purpose of the hearing is for the Court to determine whether the class settlement is fair, reasonable, adequate, and in the best interests of the class.

**VIII.** **MORE INFORMATION:** More information is available at www.edcombs.com and [ www.settlementwebsite ]. You may also inspect the pleadings and other papers that have been filed in the Litigation at the office of the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., 20th Floor, Chicago, IL 60604. If you have questions about this notice or the proposed settlement, you may contact Settlement Class Counsel. **THE COURT AND THE DEFENDANT <u>CANNOT</u> PROVIDE INFORMATION.**

**BY ORDER OF THE U.S. DISTRICT COURT, N.D. Ill.**

# CLAIM FORM

**_CHICAGO CAR CARE INC. v. A.R.R. ENTERPRISES, INC._, No. 19-CV-7687 (N.D. Ill.)**

**TO RECEIVE A PAYMENT UNDER THIS SETTLEMENT AGREEMENT, THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE <u>DATE, 2022</u> TO THE FOLLOWING:**

*Identify settlement website and login information*

*OR*

*Chicago Car Care v. ARR Enterprises*

**Class-Settlement.com**

**PO Box 9009**

**Hicksville, NY 11802**

IF YOU DO NOT SUBMIT A COMPLETED CLAIM FORM SUBMITTED ONLINE OR POSTMARKED BY THE DATE INDICATED YOU WILL NOT BE ELIGIBLE TO RECEIVE A PAYMENT UNDER THIS SETTLEMENT. YOUR FAX NUMBER(S) WILL BE CHECKED AGAINST RECORDS PRODUCED IN THIS CASE. THE VALUE OF EACH INDIVIDUAL SETTLEMENT PAYMENT CANNOT BE DETERMINED UNTIL THE DEADLINE TO SUBMIT A CLAIM HAS PASSED.

**INSTRUCTIONS:** You must provide all required information below and sign the claim form and submit online or mail the claim form. If you received a fax at more than one fax number you must submit all fax numbers in this form or provide additional copies of this form that you have completed with each fax number. You may be required to submit a W-9 form if the value of your claim exceeds $599.99. If you are required to submit a W-9 form and do not do so, your recovery will be limited to $599.99. Payment will be pro rata based on the number of faxes sent to each unique fax number.

Please print or type the following information:

NAME OF PERSON OR ENTITY THAT SUBSCRIBED TO THE FAX LINE DURING THE CLASS PERIOD (a subscriber is the person or entity that maintained the account with the telecommunications company):

**Company Name**

**Contact Name**   Last

First

**Address**   Line 1

Line 2

City/St/Zip

**Day Time Phone (area code-number):**

Telephone

**Fax Number(s)** at which you received fax from A.R.R. Enterprises, Inc. (area code-number):

Fax 1

Fax 2

Fax 3

**Sign the Claim Form and submit it to the Class Settlement Administrator.**

After you complete this Claim Form, <u>sign</u> and submit it:

| By U.S. Mail, postmarked no later than **<u>DATE, 2022,</u>** at the following address: | Alternatively, you may complete this Claim Form online by **<u>DATE, 2022</u>** at the following URL: |
|---|---|
| **Chicago Car Care v. ARR Enterprises**<br>**Class-Settlement.com**<br>**P.O. Box 9009**<br>**Hicksville, NY 11802-9009** | **[ www.settlementwebsite ]**<br>Username:<br>Password: |

SIGNATURE: _____    DATE: _____

PRINT NAME AND TITLE: _____

**IT IS YOUR RESPONSIBILITY TO KEEP A CURRENT ADDRESS ON FILE WITH THE CLASS ADMINISTRATOR.**

# <u>EXHIBIT 2</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CAR CARE INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | 19 C 7687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Harjani |
| | ) | |
| A.R.R. ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT**

The Motion of Chicago Car Care Inc. ("Plaintiff") for Preliminary Approval of Class Action Settlement with Defendant A.R.R. Enterprises, Inc. ("Defendant" or "ARR") came on for hearing on DATE, 2021.

Having considered Plaintiff's moving papers, the signed Settlement Agreement (the "Settlement Agreement") attached as <u>Appendix A</u> to Plaintiff's Motion for Preliminary Approval, and all other evidence submitted concerning Plaintiff's motion, and being duly advised in the premises, the Court hereby preliminarily finds that:

(a)     The Court has jurisdiction over the subject matter of this action and personal jurisdiction over the parties and the members of the Settlement Class (as defined below).[1]

(b)     The settlement proposed in the Settlement Agreement has been negotiated in good faith at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class.

---

[1] Unless otherwise defined herein, all capitalized terms used in this Order that are defined terms in the Settlement Agreement shall have the same meaning as set forth in the Settlement Agreement.

1

(c)     The Class Notice (as described in the Settlement Agreement) fully complies with Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Litigation.

(d)     With respect to the Settlement Class, and for settlement purposes only, certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3).  This Court finds that members of the Settlement Class will receive notice of the settlement through the notice program described below.

**IT IS THEREFORE ORDERED THAT:**

1.     The settlement proposed in the Settlement Agreement has been negotiated in good faith at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the factual, legal, practical and procedural considerations raised by this case.

2.     The following class (the "Settlement Class") is preliminarily certified solely for the purpose of settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons with fax numbers, who on June 7, 2017, were sent transmissions  in the form of Exhibit A, sent by or on behalf of ARR and received on a traditional fax machine or otherwise.

The Court makes a preliminary finding that this action satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23(a) and (b) in that: (i) the Settlement Class as defined in the Settlement Agreement is so numerous that joinder of all members is not practicable; (ii) there are questions of law and fact common to the Settlement Class; (iii) the claims of the Class Representative is typical of the claims of the Settlement Class, and the Class Representative will fairly and adequately protect the interests of the Settlement Class; (iv) the Class Representative

will fairly and adequately represent the interests of the Settlement Class; (v) questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.    The Court preliminarily appoints Plaintiff Chicago Car Care Inc. as Class Representative of the Settlement Class and finds that it meets the requirements of Fed. R. Civ. P. 23.

4.    The Court preliminarily appoints the following lawyers as Settlement Class Counsel and finds that they meet the requirements of Fed. R. Civ. P. 23: Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner and Goodwin, LLC, 20 S. Clark Street, Suite 1500, Chicago, Illinois 60603.

5.    Pursuant to the Settlement Agreement, Defendant has agreed to pay three hundred fifteen thousand dollars ($315,000.00) into the Settlement Fund. The Settlement Fund is to be established and maintained by the Settlement Class Administrator for the explicit purpose of issuing and/or paying the Settlement Class Recovery with respect to the Settlement Class and Settlement Class Members, any incentive award to Plaintiff, any award of attorneys' fees and costs to Settlement Class Counsel, and any other expenditure authorized by this Court. Costs and expenses incurred by the Settlement Class Administrator (the "Notice and Administrative Expenses") in connection with its role, responsibilities, duties, and obligations relating to the Settlement Agreement, including, but not limited to, costs and expenses associated with notice, claims administration, and distribution of settlement checks, shall exclusively come from the Settlement Fund, anticipated in the amount of $15,340.00. Attorneys' fees and costs awarded to Settlement Class Counsel and the incentive award awarded to the Class Representative will be

exclusively paid from the Settlement Fund. Class Members will receive a pro-rata share of the Settlement Fund per unique fax transmission after Settlement Class Counsel's fees and costs awards, Class Representative's incentive award, Notice and Administrative Expenses, and any other expenditure authorized by the Court are deducted from the Settlement Fund.

6.     If (i) the Settlement Agreement is terminated pursuant to its terms; (ii) the Settlement Agreement, the Preliminary Approval Order, and/or the Final Approval Order do not for any reason become effective; or (iii) the Settlement Agreement, Preliminary Approval Order, and/or Final Approval Order are reversed, vacated, or modified in any material respect which is not agreeable to all Parties, then (a) all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including without limitation, this Order and the certification of the Settlement Class, which shall have no further force and effect and shall not be offered in evidence or used in the Litigation or any proceeding for any reason whatsoever; (b) the Parties shall stand in the same posture, procedurally and substantively, as if the Agreement had not been negotiated, made or filed with the Court;  (c) the Parties rights and defenses will be restored without prejudice to the status quo ante prior to his Agreement.

In the event that (i) the Settlement Agreement is terminated pursuant to its terms; (ii) Defendant withdraws from the Agreement; (iii) the Agreement does not become effective; or (iv) the Final Approval Order is reversed, vacated or modified in any material respect which is not mutually acceptable to the Parties, then the Settlement Class Administrator shall return to Defendant within three (3) business days all funds paid or otherwise received from the Settlement Fund, less any reasonable costs (anticipated in the amount of $15,340.00) that were incurred before any of the aforementioned events and in good faith.  If the settlement does not become final in accordance with the terms of the Settlement Agreement, then the Preliminary Approval Order

and/or the Final Approval Order shall be null and void and shall be deemed automatically vacated. Plaintiff and Defendant reserve all procedural and substantive rights in existence as of the date of execution of the Agreement, and the doctrines of res judicata, collateral estoppel or law of the case shall not be applied as related to the Agreement.

7.     The Court approves, as to form and content, the Notice of Class Action Settlement and Claim Form attached to the Settlement Agreement as Exhibit 1 and finds that the Parties' proposed plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Fed. R. Civ. P. 23.  That plan is approved and adopted.

8.     The Court appoints Class-Settlement.com as the Settlement Class Administrator.

9.     Within thirty-five days after the entry of this Order Class-Settlement.com shall send the Notice and Claim Form via fax, substantially in the form of Exhibit 1, to the facsimile numbers identified on the Fax List.  The Settlement Class Administrator shall make at least two additional attempts to transmit the Notice by fax to those numbers where the initial transmission failed.  After a total of three unsuccessful attempts to transmit the notice to a member of the Settlement Class, the Settlement Class Administrator shall determine if a valid mailing address is ascertainable for those fax numbers on the Fax List.  If a mailing address is ascertainable, the Settlement Class Administrator shall mail the Notice and Claim Form to the Settlement Class Member via First Class U.S. mail, with a request for forwarding addresses, to the address ascertained that is associated with the fax number of each person in the Settlement Class identified on the Fax List. Settlement Class Counsel will also publish the Notice, Exhibit A to the complaint, and the Settlement Agreement (excluding exhibits) on their firm's website at their own expense.  The Settlement Class Administrator will also create a website that allows for electronic submission of claims, and posts copies of the complaint, Exhibit A to the complaint, answer, the Notice and

5

Claim Form, the Motion for Preliminary Approval, the Preliminary Approval Order, Settlement Class Counsel's Fee Petition, and the Settlement Agreement (excluding exhibits). This combined notice program fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the proposed settlement of this lawsuit. The Court finds that no other notice is necessary.

10.     To effectuate the settlement, the Court establishes the following deadlines for the events set forth in the Settlement Agreement and directs the Parties to incorporate the deadlines in the Notice and Claim Form:

(a)     Claim Forms shall be returned by Settlement Class Members online, by fax, or mail postmarked on or before DATE, 2022. Claims not submitted online or postmarked by this date shall be forever barred.

(b)     Objections of Class Members or any appearance of an attorney on behalf of a Class Member shall be filed in this Court and served by mail postmarked to Settlement Class Counsel and Defendant's Counsel on or before DATE, 2022, or shall be forever barred. Each objection must contain the following information: (i) the objector's full name (or business name, if the objector is an entity), address, fax number to which the fax(es) were sent, and signature of the objector; (ii) a signed statement of the objection to the Settlement Agreement; (iii) an explanation of the legal and factual basis for the objection; and (iv) documentation, if any, to support the objection. A Settlement Class Member who has timely filed a written objection may appear at the Final Approval Hearing in person or through counsel to be heard regarding his/her/its objection. However, it is not necessary

for a Settlement Class Member who has filed a valid and timely objection to appear at the Final Approval Hearing.

(c)     All memoranda filed by any Settlement Class Member in connection with objections must be filed in this Court and served on Settlement Class Counsel and counsel for Defendant by mail postmarked on or before DATE, 2022, or shall be forever barred.

(d)     Requests for exclusion by any person in the Settlement Class to opt out of the settlement must be mailed to the Settlement Class Administrator and postmarked on or before DATE, 2022, or shall be forever barred.  A notice of intention to opt out must contain the following information:  (a) the full name (or business name, if the opt-out is an entity), address, telephone and the fax number (to which the fax(es) were sent) of the person or entity seeking exclusion; and  (b) a signed statement providing that "I/we hereby request that I/we be excluded from the proposed Settlement Class in the Litigation.". All persons or entities who timely and validly request exclusion from the settlement will relinquish their rights to benefits under the Settlement Agreement and will not release any claims against Defendant.

11.     Any person or entity in the Settlement Class who does not opt-out or object to the settlement in the manner provided herein and in the Settlement Agreement shall be bound by the Settlement Agreement, if approved.

12.     Defendant shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), no later than DATE, 2022.

13.     Settlement Class Counsel shall file with the Court a list of the individual members of the Settlement Class seeking exclusion by DATE, 2022.

14.     The     Final     Approval     Hearing     will     be     conducted     on DATE, 2022 at TIME a.m. [provide dial in information] for the purposes of: (i) finally determining whether the requirements of  Federal Rules of Civil Procedure 23 are met; (ii) finally determining whether the settlement is fair, reasonable, and adequate, and whether it should be approved by the Court; (iii) finally determining whether the relief and resolution as provided under the Settlement Agreement should be entered; (iv) finally considering the distribution of the Settlement Fund under the terms of the Settlement Agreement; and (v) finally ruling upon such other matters as the Court may deem appropriate. On or before DATE, 2022, Settlement Class Counsel shall file and serve a memorandum in support final approval.

15.     All papers in support of the Settlement Agreement, including proposals regarding cy pres recipients, shall be filed no later than DATE, 2022.  Any responses to objections shall be filed with the Court on or before DATE, 2022.  There shall be no replies from objectors.

16.     In the event that the settlement does not become final and the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order shall be null and void and shall be deemed vacated, and any related findings or stipulations shall be deemed vacated.

17.     The Court may, for good cause, extend any of the deadlines set forth in this Order or adjourn or continue the final approval hearing without further notice to the Settlement Class.

18.     The Settlement Class Administrator shall establish the Settlement Fund within ten (10) days after entry of this Order. Defendant shall fund $15,340.00 of the Settlement Fund within fourteen (14) days after entry of this Order.

19.     Within five (5) days after this Order is entered Defendant or Defendant's Counsel shall provide the Settlement Class Administrator with the Fax List in MS Word or Excel format.

8

The Fax List shall also contain the number of fax transmissions sent to each unique fax number and any names of the Settlement Class Members.

20.      Settlement Class Counsel to file their fee petition by DATE, 2022.

21.      All discovery and other pretrial proceedings in the action are stayed and suspended until further order of the Court except such conduct as may be necessary to implement the Settlement Agreement and this Order.

22.      The Court retains jurisdiction to consider all further matters arising out of or connected with the settlement and the Settlement Agreement.


ENTERED:


Dated: _____         _____

                                                   United States Magistrate Judge

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CAR CARE INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | 19 C 7687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Harjani |
| | ) | |
| A.R.R. ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>FINAL APPROVAL ORDER</u>**

On DATE, 2021, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the class Settlement Agreement[1] between Plaintiff Chicago Car Care, Inc. ("Plaintiff"), on its own behalf and on behalf of the Settlement Class (as defined below), and Defendant A.R.R. Enterprises, Inc. ("ARR" or "Defendant"), as memorialized in the Settlement Agreement.

On DATE, 2022, the Court held a fairness hearing (the "Fairness Hearing"), for which members of the Settlement Class had been given appropriate notice and were invited to appear, including those with any objections. An opportunity to be heard was given to all persons requesting to be heard in accordance with the Preliminary Approval Order. [No] persons appeared in Court seeking to address the proposed settlement. Having considered the Parties' Settlement Agreement, Plaintiff's Fee Petition, Plaintiff's Memorandum in Support of Final Approval of the Class Action Settlement and all other evidence submitted, and good cause having been shown,

---

[1] Unless otherwise defined herein, all capitalized terms used in this Order that are defined terms in the Settlement Agreement shall have the same meaning as set forth in the Settlement Agreement.

1

**IT IS HEREBY ORDERED THAT:**

1.      This Court has jurisdiction over Plaintiff, Defendant, members of the Settlement

Class, and the claims asserted in the Litigation for purposes of settlement only.

2.      The Settlement Agreement was entered into in good faith following arm's length

negotiations and is non-collusive.

3.      This Court grants final approval of the Settlement Agreement, including, but not

limited to, the releases in the Settlement Agreement, and finds that it is in all respects fair,

reasonable, adequate, and in the best interest of the Settlement Class.  Therefore, all members of

the Settlement Class who have not opted out are bound by this Order finally approving the

settlement as set forth in the Settlement Agreement.  [Identify Opt Outs ] exercised its right to opt

out of the Settlement Agreement and, thus, is excluded from the settlement set forth in the

Settlement Agreement.  *Dkt. No. ###.*

### Class Certification

4.      The Settlement Class is now finally certified for purposes of settlement pursuant to

Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons with fax numbers, who on June 7, 2017, were sent
> transmissions in the form of Exhibit A, sent by or on behalf of ARR
> and received on a traditional fax machine or otherwise.

5.      The Court finds that certification solely for purposes of settlement is appropriate in

that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there

are questions of law and fact common to the Settlement Class and those questions predominate

over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the

claims of the Settlement Class; (d) Plaintiff will fairly and adequately protect the interests of the

class; (e) Edelman, Combs, Latturner & Goodwin, LLC is adequate class counsel; and (f) a class action is the superior method for the fair and efficient adjudication of this controversy.

6.      Chicago Car Care Inc. is designated as a representative of the Settlement Class.

7.      Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner and Goodwin, LLC are appointed as Class Counsel.

**<u>Class Notice</u>**

8.      The Class Notice (as described in the Settlement Agreement) fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Litigation.  The Court has approved the forms of notice to the Settlement Class.

9.      With respect to the Settlement Class, this Court finds that certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3).  Notice was given by facsimile or U.S. mail to each member of the Settlement Class whose identity could be identified through reasonable effort.  Settlement Class Counsel also posted the Settlement Agreement (without exhibits), <u>Exhibit A</u> to the complaint, and Class Notice on the firm's website, www.edcombs.com. The Class Notice and Claim Form, the Motion for Preliminary Approval, the Preliminary Approval Order, complaint, <u>Exhibit A</u> to the complaint, answer, and Settlement Class Counsel's fee petition and Settlement Agreement (without exhibits) were also posted on [settlement website].  These forms of Class Notice fully comply with the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and are due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

A total of ## valid and timely claim forms were submitted.

10.     The Court finds that Defendant properly and timely notified the appropriate state and federal officials of the Settlement Agreement under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1715.

## Objections and Opt-Outs

11.      [No] objections were filed by any of the Settlement Class Members.

12.     All persons and entities who made timely and valid requests for exclusion are excluded from the Settlement Class and are not bound by this Final Approval Order. The following entities [identify opt outs] have timely and validly requested exclusion from the Settlement Class. Accordingly, [identify opt outs] are excluded from the Settlement Class, shall receive no payment pursuant to the Settlement Agreement, and are not bound by this Final Approval Order. *Dkt. No. ##*.

## Class Compensation

13.     In accordance with the terms of the Settlement Agreement, A.R.R. Enterprises, Inc. shall provide a total of $315,000.00 to the Settlement Fund, less any costs already advanced for notice and administrative expenses,[2] of $15,340.00, pursuant to the terms of the Settlement Agreement.  No portion of the Settlement Fund shall revert back to Defendant.

## Releases

14.     Upon entry of this Order Finally Approving the Settlement, Plaintiff and each Settlement Class Member shall be deemed to have granted the releases set forth in the Settlement Agreement.

---

[2] Defendant A.R.R. Enterprises, Inc. has already deposited $15,000 into the Settlement Fund.

## Award of Attorneys' Fees, Costs, and Incentive Award

15.     The Court has considered Settlement Class Counsel's application for attorneys' fees and costs.  The Court awards Settlement Class Counsel the sum of $99,886.66 as an award of attorney's fees and costs to be paid exclusively from the Settlement Fund, and finds this amount of fees and expenses are fair and reasonable. This award shall be distributed to Settlement Class Counsel within fourteen (14) days following the Effective Date as that term is defined in the Settlement Agreement.[3]

16.     The Court grants Settlement Class Counsel's request for an incentive award to the class representative, and awards $10,000.00 to Chicago Car Care, Inc., to be paid exclusively from the Settlement Fund. The Court finds that these payments are justified by the class representative's service to the Settlement Class. These awards shall be distributed to Chicago Car Care Inc. within fourteen (14) days following the Effective Date as that term is defined in the Settlement Agreement.

## Other Provisions

17.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder. The Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force and effect of an order of this Court.

18.     Neither the Settlement Agreement, the Preliminary Approval Order, this Order finally approving the settlement, nor any of their provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order, and Order Finally Approving the Settlement), negotiations, or proceedings relating in any way to the

---

[3] The "Effective Date" is defined in the Settlement Agreement to mean the date upon which all of the following occurs: (a) the Court enters this Final Approval Order; and (b) the expiration of five (5) business days after the date this Final Approval Order becomes final and non-appealable.

settlement, shall be construed as, used as, or deemed to be evidence of an admission or concession of any kind by or against any person, including Plaintiff, Defendant, or any of the Released Parties, and shall not be offered or received in evidence in this or any other action or proceeding except in an action brought to enforce the terms of the Settlement Agreement or except as may be required by law or court order. This Order is not a finding of the validity or invalidity of any claims or a determination of any wrongdoing by the Defendant or any of the Released Parties. This Order does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiff, the Settlement Class, or the Defendant.

19.    The Court orders A.R.R. Enterprises, Inc., to deliver the Net Settlement Fund to the Settlement Class Administrator within ten (10) days after the Effective Date as that term is defined in the Settlement Agreement.

20.    The Settlement Class Administrator shall take all reasonable steps necessary to ensure that the settlement is effectuated in a manner consistent with the Settlement Agreement.

21.    The Settlement Class Administrator shall distribute the Settlement Class Recovery to the Settlement Class Members in accordance with the provisions of this Order and the parties' Settlement Agreement, within thirty (30) days following the Effective Date as that term is defined in the Settlement Agreement.

22.    In the event that settlement payments to Settlement Class Members exceed the threshold amounts that must be reported to the Internal Revenue Service by means of an IRS Form 1099, the Settlement Class Administrator will mail W-9 forms to the Settlement Class Members within twenty-one (21) days after entry of this Final Approval Order. W-9 forms will also be available on the Settlement Class Administrator's website.  Settlement Class Members have thirty

(30) days to respond to a request to complete a W-9 form.  If a Settlement Class Member does not submit a W-9 form, the settlement payment will be limited to $599.99.

23.    The Settlement Class Administrator shall make the *cy pres* payment, if any, to [identify *cy pres* recipient] forty-five (45) days after expiration of the  last void date on all of the Settlement Class Members' checks (i.e., both Initial Distributions and Second Distributions, if any).

24.    On and after the Effective Date, Plaintiff and the Settlement Class Members, and each of them, are forever barred and permanently enjoined from directly, indirectly, representatively, or in any other capacity filing, commencing, prosecuting, continuing, or litigating any proceeding against any of the Released Parties in any jurisdiction based on or relating in any way to the Released Claims.

25.    The Court further orders that upon the Effective Date, the Settlement Agreement and its releases will be binding on, and have *res judicata* preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and/or the Settlement Class Members asserting any of the Released Claims against any of the Released Parties.

26.    Settlement Class Counsel shall file a declaration of final accounting of the settlement by DATE, 2022, if there is no Second Distribution.  If there is a Second Distribution, Settlement Class Counsel shall file a declaration of final accounting by DATE, 2022.

27.    The Parties shall carry out their respective obligations under the Settlement Agreement and as ordered herein.

28.    A hearing on the final accounting of the settlement and for entry of a dismissal order is set for DATE, 2022 at TIME a.m.

ENTER:

Dated: _____          _____
                                        United States Magistrate Judge

# **<u>APPENDIX B</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CAR CARE INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 7687 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Harjani |
| A.R.R. ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020. Member Cathleen M. Combs retired in 2021.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 5, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage*

1

*Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.      **Cathleen M. Combs** (retired 2021) is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Sivulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals. She is a member of the Northern District of Illinois trial bar.

4.      **James O. Latturner** (retired 2020) is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule*

2

*for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

     5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824, 2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1ˢᵗ Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1ˢᵗ Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.,* 11cv4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, 94cv3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

     6.    **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) **;** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1ˢᵗ Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS

113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

      7.      **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

      8.      **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

      9.      **Associates**:

      a.      **Carly Cengher** is a graduate of the University of Oregon (B.A., 2011), the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019). She is a member of the Illinois Bar.

      b.      **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018). He is a member of the Illinois Bar.

      c.      **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020). She is a member of the Illinois Bar.

      d.      **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A. 2018) and University of Illinois Chicago School of Law (J.D., May 2021). He is a member of the Illinois Bar.

      10.      The firm also has a dozen legal assistants and support staff.

      11.      Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

4

12.	**Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Sivulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235, 2013 WL 1858587, 2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 955 F. Supp. 2d 825 (N.D.Ill. 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC,* 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1,

1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

13.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  Mr. Edelman argued it before the Supreme Court and Seventh Circuit.  *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters."  *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

14.     **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied)  (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,* 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7ᵗʰ Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7ᵗʰ Cir. 2014) (en banc) (venue abuse).

15.     **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7ᵗʰ Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

16.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7ᵗʰ Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

17.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

18.     Another line of cases under the Fair Credit Reporting Act which we have brought,

6

primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

19.     **Class action procedure:** Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness), and *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

20.     **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

21.     **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n*, 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

22.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

23.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

24.    **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher  v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.).  These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment.  *Bessette v. Avco Financial Services*, 230 F.3d 439  (1st Cir. 2000).

25.    **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.    Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.    Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*,  955 F.Supp. 938  (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c.    Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994);  *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d.    Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).
e.    Improper obligation of cosigners.  *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995);  *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f.    Evasion of FTC holder rule.  *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

26.    These cases also had a substantial effect on industry practices.  The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

27.    **Predatory lending practices:**  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir.  2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006);  *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d

862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

28.     **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.      Phony nonfiling insurance.  *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932  (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.      The McCarran Ferguson Act exemption.  *Autry v. Northwest  Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.      Loan flipping.  *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.      Home improvement financing practices.  *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*,  690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.      Insurance packing.  *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

29.     **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428,  1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992

9

U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

30.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act.  As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

31.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy.  The firm has extensive experience with such litigation.  Reported decisions in such cases include:  *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

32.     Some of the other reported decisions in our cases include:  *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R.  870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.,* 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.,* v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.,* 973 F.Supp.2d 905 (N.D.Ill. 2013).

33.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action.  *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.
The  hourly rates for the attorneys set forth below,  are the same as the regular
current rates charged for their services in other contingent matters in class action litigation.  They are also consistent with fees charged to occasional hourly paying clients.  The firm adjusts them annually to account for inflation and increasing experience  and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area.  The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

        Executed at Chicago, Illinois.


                        /s/ Daniel A. Edelman
                        Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)